Filed 7/24/26  P. v. Allbright CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B345738 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24ARCF00421) |
| v. | |
| JOSEPH ALLBRIGHT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Affirmed.

Morad Fakhimi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Megan A. Banke, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joseph Allbright appeals from a judgment entered after he pleaded no contest to, among other charges, possession of methamphetamine that a police officer saw in plain view inside Allbright's truck during a traffic stop. Allbright argues that the trial court erred by denying his motion to suppress evidence because the traffic stop was unlawfully prolonged in violation of his Fourth Amendment rights. Finding no error, we affirm.

## BACKGROUND

The Los Angeles County District Attorney charged appellant with possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), possession of a firearm by a narcotic addict (Pen. Code, § 29800, subd. (a)(1); count 2), two counts of possession for sale of methamphetamine (Health & Saf. Code, § 11378; counts 3 & 5), and two counts of possession for sale of fentanyl (Health & Saf. Code, § 11351; counts 4 & 6).

After Allbright was held to answer at a preliminary hearing, he moved to suppress all evidence obtained through his detention. The trial court heard the motion at a special hearing. Los Angeles Police Department Officer Frank Robles was the sole witness. The trial court admitted Robles's body-worn video into evidence. At Allbright's unopposed request, the trial court also took judicial notice of excerpts from Robles's preliminary hearing testimony.[1] Robles testified to the following facts:

---

[1] We disregard Allbright's citations to preliminary hearing testimony that the trial court did not judicially notice and that neither party offered for the trial court's consideration. (See *People v. Fisher* (1995) 38 Cal.App.4th 338, 341; *People v. Neighbours* (1990) 223 Cal.App.3d 1115, 1118-1120.)

On March 16, 2024, Robles patrolled the area of Bellanca Avenue, south of Manchester Avenue, in Los Angeles. He knew the area was a "high narcotics area" where he had made and assisted in arrests for possession of narcotics, firearms, and stolen vehicles. He saw a pickup truck parked on the curb with a driver (later identified as Allbright) seated in the driver's seat. He noticed that Allbright's truck did not have a front license plate, in violation of Vehicle Code section 5200, subdivision (a).[2]

Allbright was speaking with another man (Kenneth Ledete), who was standing next to the truck's front passenger door.[3] Robles recognized Ledete, whom he had arrested for possession of methamphetamine for sale on two prior occasions. He had recovered significant quantities of methamphetamine from Ledete during both prior arrests. He knew that at least one of the prior arrests had led to a conviction and he suspected (as Ledete later confirmed) that Ledete was on probation.

Based on his prior contacts with Ledete and his knowledge of the area, Robles suspected that Allbright's and Ledete's interaction concerned narcotics. Robles decided to conduct a "pretextual stop" of Allbright both because the truck was missing a front license plate (as "the pretext") and because he intended to investigate the suspected presence of narcotics.

---

[2] "When two license plates are issued by the department for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear." (Veh. Code, § 5200, subd. (a).)

[3] Officer Robles recalled that the front passenger door was open but admitted on cross-examination that his body-worn video showed the door was closed (with its window partially open).

Robles exited his vehicle, approached Allbright's truck, and asked Allbright what he was doing there. Allbright said he was discussing the purchase of a bicycle seat.

Around three minutes into the body-worn video, Robles ordered Allbright to exit the truck and detained both Allbright and Ledete next to a fence. Robles searched Ledete's person and found no narcotics.[4] Robles handcuffed Ledete but not Allbright.

Because Robles was working solo, he summoned and waited for a backup unit. Around six minutes into the body-worn video (as the parties agreed), while waiting for backup, Officer Robles looked into Allbright's truck from the adjacent sidewalk and saw methamphetamine in plain view in a cup holder, as well as aluminum foil and a torch lighter (which he recognized as paraphernalia often used to ingest fentanyl and other narcotics) in the area of the center console. Robles described what he saw to Allbright, who admitted that he had "dope" in the truck.

Around 10 minutes after Allbright exited his truck, and after backup officers arrived, Robles searched the truck and recovered the methamphetamine he had seen. He arrested Allbright.[5]

---

[4] Allbright's counsel represented during closing argument that Officer Robles also searched Allbright's person. The appellate record contains no evidence that the alleged search of Allbright's person prolonged his detention.

[5] Robles and other officers later executed a search warrant at Allbright's residence and found a firearm, fentanyl, and additional methamphetamine. Allbright challenges the legality of that search only on the ground that it was the fruit of his initial, allegedly unlawful detention.

The trial court denied Allbright's motion to suppress all evidence obtained through the detention.  The court found Robles's testimony was credible.  The court concluded that Robles lawfully detained Allbright based on the truck's missing front license plate, notwithstanding that the missing plate was a pretext for a narcotics investigation, and that Robles's observation of methamphetamine in plain view inside the truck justified his search of the truck.

Allbright pleaded no contest to all counts.  The trial court sentenced Allbright to three years' imprisonment on count 1, stayed the terms on all other counts, suspended execution of the sentence, and placed Allbright on formal probation for two years.  Allbright timely appealed.

## DISCUSSION

### A.    Fourth Amendment principles

" ' "The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' " (*People v. Valle* (2024) 105 Cal.App.5th 195, 200 (*Valle*).)  " 'In reviewing factual determinations for substantial evidence, a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." ' " (*People v. Helzer* (2024) 15 Cal.5th 622, 646 (*Helzer*).)

" '[T]he lack of a front license plate has long been recognized as a legitimate basis for a traffic stop.' " (*Valle, supra,* 105 Cal.App.5th at p. 202, quoting *People v. Saunders* (2006) 38

5

Cal.4th 1129, 1136.) "Whether the officer also had additional reasons for conducting the traffic stop does not eliminate an otherwise reasonable suspicion that a driver was violating the law." (*Valle*, at p. 203, citing *Whren v. U.S.* (1996) 517 U.S. 806, 810.) "In other words, '[p]retextual stops are tolerated—so long as the lawful bounds that justify the stop are observed.' " (*Valle*, at p. 203, quoting *People v. Esparza* (2023) 95 Cal.App.5th 1084, 1094 (*Esparza*).)

"A pretextual stop only ripens into an unlawful detention if it deviates too far from the proper legal justification, which is to 'address the traffic violation that warranted the stop'—what the [United States Supreme] Court has called the 'mission' of the stop—and 'attend to related safety concerns.' " (*Esparza, supra*, 95 Cal.App.5th at p. 1094, quoting *Rodriguez v. United States* (2015) 575 U.S. 348, 354 (*Rodriguez*).) The " 'mission' " includes " 'ordinary inquiries incident to [the traffic] stop,' " such as " 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.' " (*Esparza*, at p. 1094, quoting *Rodriguez*, at p. 355.) "[T]he government's officer safety interest stems from the mission of the stop itself. Traffic stops are 'especially fraught with danger to police officers,' [citation], so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." (*Rodriguez*, at p. 356.) For example, safety concerns justify an officer in ordering the driver to exit the car. (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 110-111 & fn. 6; see also *People v. Lomax* (2010) 49 Cal.4th 530, 564 [even absent individualized suspicion, "[o]nce a vehicle has been detained in a valid traffic stop, police officers may order the driver and passengers out of

6

the car pending completion of the stop without violating the Fourth Amendment" (italics omitted)].)

"Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (*Rodriguez*, *supra*, 575 U.S. at p. 354.) "The seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.' " (*Id.* at p. 355.)

## B.    Allbright's detention did not violate his Fourth Amendment rights.

Allbright challenges the credibility of Officer Robles's testimony that the truck's missing front license plate supplied a basis (albeit a pretextual one) for Allbright's detention. The trial court, however, found Robles credible. We may not reevaluate credibility. (*Helzer*, *supra*, 15 Cal.5th at p. 646.) Robles's observation that the truck was missing a front license plate supplied " 'a legitimate basis for a traffic stop.' " (*Valle*, *supra*, 105 Cal.App.5th at p. 202.) That the basis was pretextual is immaterial. (*Id*. at p. 203.)

Around six minutes into the traffic stop, Robles saw methamphetamine in plain view inside Allbright's truck. From that point, Robles had reasonable suspicion to detain Allbright for a narcotics investigation. (See *People v. Ramirez* (2024) 104 Cal.App.5th 315, 328 [officer's observation of firearm in plain view inside defendant's vehicle four minutes into traffic stop established probable cause to believe defendant was unlawfully carrying concealed firearm].)

The key question is whether the traffic stop became unlawfully prolonged in the six minutes between when Robles initiated the stop and when he saw the methamphetamine in

7

plain view.  For the reasons explained below, we conclude it did not.

Allbright cites no evidence or authority suggesting that Robles should have completed the mission of the traffic stop and attended to related safety concerns in fewer than six minutes. Instead, Allbright argues that the traffic stop was "unnecessarily prolonged *ab initio*"—apparently meaning regardless of its duration—because Robles did not mention the missing front license plate to Allbright or affirmatively investigate the traffic violation.  We disagree.

*Esparza, supra*, 95 Cal.App.5th 1084, is instructive.  In that case, two police officers stopped the defendant and his three passengers on the pretextual basis that the windows of the defendant's car were tinted in violation of the Vehicle Code (the officers' "true interest was in policing gang activity").  (*Id.* at pp. 1087-1088.)  As the officers approached the car, they summoned backup, which arrived in three distinct "rounds."  (*Id.* at p. 1088.)  A detective in the second backup round identified the car's occupants as gang members and recommended searching one passenger because he was " 'always strapped.' "  (*Id.* at pp. 1088-1089.)  After the final backup round arrived, searches of that passenger and the defendant uncovered firearms, leading to the two suspects' arrests.  (*Id.* at p. 1089.)  The appellate court held that the traffic stop was not unlawfully prolonged because "the detention lasted a mere seven minutes, during which the officers proceeded expeditiously consistent with reasonable concerns for officer safety."  (*Id.* at p. 1087.)  "Any delay that resulted from [the lead officer's] decision to wait for backup was reasonable in light of his justifiable safety concerns."  (*Id.* at p. 1093.)

The defendant argued that because the officers did not issue him a citation for the tinted windows (the opinion does not address whether the officers mentioned the tinted windows to the defendant), the officers' gang investigation unlawfully "overtook the lawful mission" of the traffic stop.  (*Esparza, supra*, 95 Cal.App.5th at p. 1098, fn. 13.)  The appellate court rejected the argument, reasoning that the officers presumably would have cited or warned the defendant for the traffic violation if they had not discovered evidence that the defendant was guilty of felonies, and that they could rationally forego such action after making that discovery.  (*Ibid.*)

Here, similarly, Robles presumably would have cited Allbright for the truck's missing front license plate if he had not seen methamphetamine in plain view inside the truck while waiting for backup, leading to Allbright's arrest for a felony.  As the Attorney General argues, *Esparza* supports a conclusion that Robles reasonably acted to ensure his safety—and thus did not unlawfully prolong the stop—throughout the six minutes during which Robles initiated the stop, ordered Allbright out of the truck, detained Allbright and Ledete nearby, and saw the methamphetamine in plain view while waiting for backup.  (See also *People v. Vera* (2018) 28 Cal.App.5th 1081, 1087-1088 [detective conducting traffic stop lawfully "acted to ensure his safety by ordering [driver] out of the car, patting him down, and asking him to sit on a curb"].)

As noted, the United States Supreme Court "has recognized that traffic stops are 'especially fraught with danger to police officers.'" (*Arizona v. Johnson* (2009) 555 U.S. 323, 330, quoting *Michigan v. Long* (1983) 463 U.S. 1032, 1047; accord, *Rodriguez, supra*, 575 U.S. at p. 356.)  "[T]he risk of a violent encounter in a

9

traffic-stop setting 'stems not from the ordinary reaction of a motorist stopped for a [traffic] violation, but from the fact that evidence of a more serious crime might be uncovered during the stop.' [Citation.] '[T]he motivation of a *passenger* to employ violence to prevent apprehension of such a crime . . . is every bit as great as that of the driver.' " (*Johnson*, at pp. 331-332, italics added.)

Here, although Ledete (whom Robles recognized from prior narcotics arrests) was not inside Allbright's truck when Robles arrived, Ledete was standing next to the truck's front passenger door and speaking with Allbright. Robles had made or assisted in arrests in the area, including for possession of firearms. Allbright and Ledete outnumbered Robles. While waiting for backup, Robles searched and handcuffed Ledete (and allegedly searched Allbright as well). Based on those facts, the trial court could reasonably find that Robles's concern for his safety was genuine and reasonably supported his decision to wait for backup before addressing the missing front license plate.

Allbright addresses officer safety only by quoting *Knowles v. Iowa* (1998) 525 U.S. 113, 117, for the proposition that "[t]he threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest." *Knowles* held that after an Iowa police officer completed a traffic stop and issued a citation, the officer unlawfully searched the driver's vehicle. (*Id.* at p. 114.) *Knowles* did not address whether the stop was unlawfully prolonged. It did, however, recognize that in the context of routine traffic stops, a concern for officer safety is "plainly" present. (*Id.* at p. 117.)

In short, we conclude that Officer Robles did not unlawfully prolong the traffic stop because he reasonably acted to ensure his

safety throughout the six-minute period leading to his observation of methamphetamine in plain view inside Allbright's truck. Accordingly, the trial court did not err by denying Allbright's motion to suppress.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:


ROTHSCHILD, P. J.


WEINGART, J.

11